# McCarver *v.* Herzberg.

*Action of Ejectment.*

| 120 | 523 |
| 124 | 232 |
| 120 | 523 |
| 136 | 322 |
| 136 | 324 |
| 187 | 631 |
| 120 | 523 |
| 141 | 516 |

1. *Courts take judicial knowledge of joint resolution of General Assembly.*—A joint resolution of the General Assembly is a public legislative act, of which courts take judicial notice.

2. *Granting of lands in aid of railroads by act of Congress of June 3, 1856; right and title of State granted thereby.*—The act of Congress approved June 3, 1856, (11 U. S. Statutes at Large, p. 17), by the terms of which there was granted to the State of Alabama, for the purpose of aiding in the construction of certain railroads "every alternate section of land designated by odd numbers, to six sections in width on each side of each of said railroads," vested in the State the right and title to the lands embraced in the grant from the date thereof, which right and title when the line of each road was definitely fixed attached to the specific sections designated in the act.

[McCarver v. Herzberg.]

3. *Same; effect of condition contained in said act.*—The provision of the act of Congress, granting to the State Government lands to aid in the construction of certain railroads, that "If any of said railroads is not completed within ten years, no further sale shall be made and the lands not sold shall revert to the United States," constitutes a condition subsequent, for the breach of which, by the failure to complete either of the roads within the time limited, the United States has the right, at any time thereafter, either by judicial proceedings or legislative action, to enforce a forfeiture of said lands and to resume title thereto.

4 *Same: State acquires the lands as trustee, for the specific purpose expressed in the act.*—By the acceptance of the grant of lands made by the act of Congress of June 3, 1856, to aid in the construction of certain railroads, the State became the trustee of the United States, limited in the application and power of disposition of the lands to the purposes expressed in the act creating the trust; and, therefore, in the execution of the trust, the State had no power, in order to aid in the construction of one railroad. to apply or dispose of lands which had been granted exclusively in aid of the construction of another railroad; and any attempt on the part of the State so to do is a mere nullity and inoperative to defeat the right of the United States, in the event of the failure to construct one of the roads, to enforce the forfeiture of the lands granted in aid of its construction and to resume title thereto.

5. *Same; effect of grant to several railroads located within the limits specified.*—When, by the same act of Congress several grants of land are made for the benefit of different railroads, neither priority of location, nor priority of construction gives priority of right; but where two or more railroads, regularly located in pursuance of the act, approach each other so nearly that the limits of the primary grant for the benefit of each overlap, the grant is of equal undivided shares for the benefit of each railroad.

6. *Same; same.*—When by the same act of Congress several grants of land are made to aid in the construction of different railroads, and three of said roads, when legally located in pursuance of the act, approach each other so nearly that the limits of the primary grant for the benefit of each overlap, the completion of one of said roads, the other two never being completed, as provided for in the act making the grant, does not invest the State with power to divert the undivided interest in the overlapping lands granted for the benefit of the other two roads which were not constructed and completed, and apply such undivided interests to the benefit of the completed road; and, therefore, the act of the General Assembly approved February 20, 1883, (Acts of 1882–83, p. 62), in so far as it attempted

[McCarver v. Herzberg ]

to vest in certain named persons, who held a deed thereto from the Governor, the title to the undivided interest in said lands, which had been granted to the State to be applied exclusively for the benefit of the two roads which were never completed, was void, and did not operate to vest any title to such undivided interest in said persons, or to defeat the right of the United States to enforce the forfeiture to such interests and resume title thereto.

7. *Same; effect of forfeiture of right to granted lands which overlap; undivided interest in forfeited lands subject to homestead entry.* Where three of the railroads for whose benefit the same act of Congress made to the State several grants of land to aid in the construction of said roads, respectively, when legally located in pursuance of the act, approach each other so nearly that the limits of the primary grant for the benefit of each overlap, and one of said roads is completed but the other two are not completed as provided for in the act making the grant, a deed from the Governor and an act of the General Assembly of the State seeking to convey and vest in certain named persons a title to the entire undivided interest in the overlapping lands invest in such persons a title to only one undivided one-third interest, and by reason of the failure to complete the other two roads, the remaining undivided two-thirds interests in the lands become subject to the reverter clause of the granting act, and being lands lying opposite to and coterminous with the two uncompleted roads, they are within the operation of the forfeiture act of Congress of September 29, 1890; and by force of said act the said undivided two-thirds interest was resumed in the United States, and became thereafter subject to homestead entry—the homesteader acquiring by his entry a right to said undivided two-thirds interest superior to that of one holding under the deed of the Governor and the provisions of the act of the General Assembly.

8. *Action of ejectment; when certified copy of official letter from general land office not admissible in evidence.*—In an action of ejectment, on the issue whether a grant of lands by Congress to aid in the construction of a certain railroad had been cancelled, a certified copy of an official letter from the commissioner of the general land office at Washington to the register and receiver of a local land office, notifying the latter of the cancellation of the list of certain land selected by the said railroad company under the grant, is inadmissible when not accompanied by evidence tending to show that the lands in controversy were affected by the cancellation.

9. *Sufficiency of certificate of acknowledgment to deed; judicial notice as to public officer.* Where in a certificate of acknowledgment to a deed made before a judge of probate, the venue of the

[McCarver v. Herzberg.]

acknowledgment as stated is simply "The State of Alabama," and there is nothing, either in the caption or in the body of the acknowledgment or in the signature of the officer, to indicate in what county it was taken and certified, and the certificate is simply signed by the person before whom the acknowledgment was made signing his name as "Judge of Probate," such acknowledgment is sufficient and valid, and the deed, being recorded within twelve months from the date of its execution, is admissible in evidence without proof of its execution, (Code of 1896, § 992); since the courts judicially know that the acknowledgment was taken in this State by an officer authorized by statute to take and certify acknowledgments within the territorial area of his county, and, therefore, it will be presumed in favor of the regularity and validity of the acknowledgment as certified, that the probate judge before whom it was made exercised his functions within the limit of his territorial jurisdiction.

APPEAL from the City Court of Gadsden.
Tried before the Hon. JOHN H. DISQUE.

This was a common law action of ejectment brought by the appellee, H. Herzberg, against the appellant, W. W. McCarver, to recover certain lands specifically described in the declaration. The facts of the case are sufficiently stated in the opinion. The cause was tried by the court without the intervention of a jury; and upon the hearing of all the evidence the court rendered judgment for the plaintiff for the entire title in and to all the lands sued for. To the rendition of this judgment the defendant duly excepted. The defendant appeals, and assigns as error the rulings of the court upon the evidence to which exceptions were reserved, and the rendition of judgment in favor of the plaintiff.

JAMES AIKEN, for appellant.—When two roads cross each other, each road takes an undivided one-half interest in the lands in the common or six mile limit—when they claim under the same act.—*Sioux City &c. R. R. Co. v. C. M. & St. P. R. Co.*, 117 U. S. 406, and authorities cited.

Neither the State of Alabama, nor the Governor, could make any disposition of the lands granted to aid railroads under the act of June 3d, 1856, except as provided in

[McCarver v. Herzberg.]

said act.—*Lake Superior &c. Co. v. Cunningham*, 155 U. S. 354; *Donahue v. Lake Superior &c. Co.*, 155 U. S. 386; *Chicago, M. & St. P. R. R. Co. v. United States*, 159 U. S. 372, 16 Sup. Ct. Rep. 26.

When two roads are entitled each to an undivided moiety in lands granted by act of Congress, and one road fails to earn its moiety, the land reverts to the United States, and the other road has no title thereto. *Chicago &c. R. Co. v. United States*, 159 U. S. 372.

There can be no question as to plaintiff being a *bona fide* purchaser for value without notice. Neither the State, nor Billups & Swann had a title to more than an undivided one-third interest, and they could not convey. more than they had, even to a *bona fide* purchaser. *Sioux City &c. R. Co. v. United States*, 159 U. S. 349.

The plaintiff can claim no rights under the act of the General Assembly of Alabama, approved February 20th, 1883 (Acts of 1882–83, p. 62); because the State has no power to take the lands granted to one road and give them to another and different road.—*Lake Superior, &c., Co. v. Cunningham*, 155 U. S. 354.

DENSON, BURNETT & CULLI, *contra*.—There was no conflict of limits in the lands granted by act of Congress, so far as the road that was completed was concerned, because, first, it was never contemplated by the act of Congress; and second, because it was not accepted or disposed of as required by section 3 of the act; it being attempted to be disposed of to another and different corporation, than even the one defendant contends that it was intended for. The act of June 3d, 1856, vested title in the road on the doing of certain acts by the State. As to the road under which plaintiff claims all was done, and this vested in it the entire title to so much as was not vested in some other road by a similar action on the part of the State. How could there be a conflict in title, when no title existed in the other?—*St. Paul, &c., R. R. Co. v. Winnona, &c., R. R. Co.*, 5 Sup. Ct. Rep. 340.

The case of *Sioux City. &c., R. R. Co. v. St. Paul, &c., R. R. Co.*, 117 U. S. 406, cited by the defendant's counsel, was one in which both railroads were located and

built, and the conflicting grants had thereby accrued. In cases of that kind, it is not denied that the roads would take by moieties.

The appellee derives title through the Alabama & Chattanooga Railroad, and the title so acquired was perfected, the right of the road having been designated, and the requirements of the act of Congress complied with.—*Swann & Billups v. Lindsey*, 70 Ala. 218.

PER CURIAM.—The lands in controversy are a part of the lands granted to the State of Alabama by the act of Congress, approved June 3, 1856, to aid in the construction of certain railroads, by the terms of which there was granted to the State for this purpose "every alternate section of land designated by odd numbers, for six sections in width on each side of each of said roads." One of these roads was to run "from near Gadsden to some point on the Alabama and Mississippi State line, in the direction of the Mobile & Ohio Railroad, with a view to connect with said Mobile & Ohio Railroad;" and by a joint resolution of the General Assembly of Alabama, approved January 30, 1858, the lands granted to aid in the construction of this road were granted to the North-East & South-West Alabama Railroad Company, which afterwards, by authorized consolidation with the Wills' Valley Railroad Co., became the Alabama & Chattanooga Railroad Company. Another of these railroads was to run from Selma to Gadsden, and by an act of the General Assembly, approved January 20, 1858, the lands granted by the act of Congress to aid in the construction of this road were granted to the Alabama & Tennessee Rivers Railroad Co., which afterwards became the Selma, Rome & Dalton Railroad Co. And still another of these roads was to run "from or near Gadsden to connect with the Georgia and Tennessee line of railroads, through Chattooga, Wills', and Lookout Valleys; and by an act of the General Assembly, approved February 8, 1858, the lands granted by the act of Congress "in aid of the construction of a railroad from or near Gadsden to some suitable point so as to connect with the Western & Atlantic Railroad of the State of Georgia, designated in said act of Congress as running

from 'Gadsden to connect with the Georgia and Tennessee line of railroads, through Chattanooga (Chattooga?), Wills' and Lookout Valleys,'" were granted to the Coosa & Chattanooga (Chattooga?) Railroad Company. Each of these several grants was made subject to the conditions and restrictions and for the purposes specified in the act of Congress.

The testimony shows that the lands in controversy are situated within the six miles limit of each of the above named railroads, according to the original survey and location thereof on file in the General Land Office at Washington, and that the Alabama & Chattanooga Railroad was completed in 1873, no part of the Coosa & Chattanooga Railroad was ever constructed, and the Alabama & Tennessee Rivers Railroad was constructed only to Jacksonville, a point twenty-two miles distant from the lands sued for. On September 29, 1890, an act of Congress was approved by which it was declared that "there is hereby forfeited to the United States, and the United States hereby resumes title to, all lands heretofore granted to any State, or to any corporation in aid of the construction of any railroad opposite to and coterminous with the portion of any such railroad not now completed and in operation, for the construction and benefit of which said lands were granted." The joint resolution of the General Assembly, by which the lands granted to the State in aid of the construction of a railroad from Gadsden to some point on the Alabama and Mississippi State line to connect with the Mobile & Ohio Railroad, was not offered in evidence, so far as the record shows; but that is not of importance; the resolution is a public legislative act of which courts take notice. The title acquired by the State was conveyed to John Swann and John A. Billups, as trustees, with power to sell, by the deed of the Governor of Alabama made February 8, 1877, in pursuance of an act of the legislature authorizing the same. It is through two deeds executed by said Swann and Billups, as trustees, one dated June 1, 1877, conveying the N. ½ of N. W. ¼, and the other dated May 30, 1877, conveying the S. E. ¼ of N. W. ¼, that plaintiff claims title to the land in controversy. The defendant

34

claims title under a homestead entry made in the year 1894, after the passage of the forfeiture act above mentioned. It is manifest, therefore, that the determination of the superiority of these respective claims must depend upon the extent of the power of the State to dispose of the lands lying within the conflicting or overlapping six-mile limits of these three roads, on the one hand, and, on the other, upon the extent of the power of Congress to declare such lands forfeited, and the effect of the exercise of such power.

The act of Congress of June 3, 1856, as frequently construed by this and other courts, vested in the State the right and title to the lands embraced in the grant from the date thereof, which right and title, when the line of each road was definitely fixed, attached to the specific sections, designated by odd numbers, lying within six miles on each side of the fixed line of the road. The granting act, however, provided that "if any of said roads is not completed within ten years, no further sale shall be made, and the lands unsold shall revert to the United States." This provision constituted a condition subsequent, for the breach of which by the failure to complete either of the roads within the time limited, the United States had the right, at any time thereafter, either by judicial proceedings or by legislative action, to enforce a forfeiture of the lands granted in aid of the construction of such road, and to resume the title thereto.—*Swann & Billups v. Lindsey*, 70 Ala. 507 ; *Swann & Billups v. Miller*, 82 Ala. 530 ; *Schulenberg v. Harriman*, 21 Wall. (U. S.) 44. By the acceptance of the grant, the State became the trustee of the United States, and as such its application and power of disposition of the lands was limited to the purposes expressed in the act creating the trust. The act of Congress was a law, as well as a grant, and any application or disposition of the lands by the State in violation of the terms of the act was absolutely void. One of the express provisions of the grant by which the power of the State to use or dispose of the lands was limited was, "that the lands hereby granted for and on account of said roads, severally, shall be exclusively applied in the construction of that road for and on account of which such lands are

hereby granted." In the execution of the trust, there-
fore, the State had no power to apply, or dispose of, to
aid in the construction of one railroad, lands which had
been granted to it exclusively in aid of the construction
of another road, and any attempt on the part of the State
to vest in one railroad title to lands granted for and on
account of another, would be a mere nullity and inopera-
tive to defeat the right of the United States, in the event
of the failure to construct the latter road, to enforce a
forfeiture of the lands granted in aid of its construction,
and to resume title thereto.

As we have said, the lands in controversy are within
the six-miles limit of the surveyed line of each of the
three railroads above named. In construing this, and
similar acts of Congress, granting public lands in aid of
the construction of railroads, it has become thoroughly
well settled that when, by the same statute, several
grants are made for the benefit of different railroads,
neither priority of location nor priority of construction
gives priority of right; but where two or more roads,
legally located in pursuance of the act, cross each other,
or approach each other so nearly that the limits of the
primary grant for the benefit of each overlap, the grant
is of equal undivided shares for the benefit of each road.
*St. P. & Sioux City R. Co. v. Winona etc. R. Co.*, 112 U.
S. 720; *Sioux City & St. P. R. Co. v. C., M. & St. P. R'y
Co.*, 117 U. S. 406; *Lake Superior etc. R. Co. v. Cunning-
ham*, 155 U. S. 354; *C. M. & St. P. R'y Co. v. United
States*, 159 U. S. 372. Hence, while the act of Congress
of June 3, 1856, vested in the State the entire interest
in all the lands embraced in the grant lying within the
six-miles limit of each legally located road, yet the State,
by the terms of the act, acquired one undivided one-third
interest in the lands in controversy in trust to apply the
same exclusively to aid the construction of the railroad
from Gadsden to the Alabama and Mississippi State line
to connect with the Mobile & Ohio Railroad; and an-
other undivided one-third interest in trust to apply the
same exclusively for the benefit of the railroad to be
built from Selma to Gadsden; and the remaining undi-
vided one-third interest for the exclusive benefit of the
road from Gadsden to connect with the Georgia & Ten-
nessee and Tennessee line of railroads through Chat-

tooga, Wills' and Lookout Valleys. Holding these interests under such express trust, the State was wholly without power to divert them to other or different purposes, or to apply either share for the benefit of any railroad other than that for and on account of which it was granted, notwithstanding the latter road may never have been constructed or completed. In *Chicago, M. & St. P. R'y Co. v. United States, supra,* it was said : "The grant of an equal undivided moiety of lands in the overlapping limits of two roads was a grant for the benefit of each road in the particular moiety of lands dedicated by the act of Congress to its construction. Neither road could get the benefit of the moiety of lands granted for the building of the other road by reason of the failure of the company constructing the latter road to earn its moiety of the lands. This results from the explicit declaration by Congress of the purposes for which the lands were to be used, and, by express words, excluding all others. The provision that the lands 'hereby granted shall be disposed of by said State for the purposes aforesaid only,' precludes the idea that the State could, without a breach of trust, apply lands for the benefit of one railroad that had been granted to aid the construction of another road." Hence, the act of the General Assembly of Alabama, approved February 20, 1883, (Acts 1882-83, pp. 62-66), which was offered in evidence by plaintiff, in so far as it was an attempt to vest in John Swann and John A. Billups, as trustees, to whom had passed by the Governor's deed the title to the lands granted in aid of the construction of what is now the Alabama & Chattanooga Railroad, the title to the interests which had been granted to the State to be applied exclusively for the benefit of the other two railroads, was a mere nullity, and did not operate to vest any title in said trustees, or to defeat the right of the United States to enforce the forfeiture as to these interests and resume title thereto.

From what has been said it clearly results that Swann and Billups never acquired title to more than an undivided one-third interest in the lands in controversy, either by the deed of the Governor of the State or by the act of the General Assembly above referred to, and that

plaintiff acquired no greater interest through the deed of Swann and Billups. It further results that by reason of the failure to construct the railroad from Gadsden through Chattooga, Wills' and Lookout Valleys, to connect with the Georgia and Tennessee line of railroads, and the failure to complete the railroad from Selma to Gadsden to the lands in controversy, an undivided two-thirds interest in the lands became subject to the reverter clause of the original granting act. And being lands lying opposite to and coterminous with the uncompleted portions of these two roads, they were within the operation of the forfeiture act of September 29, 1890, and the title to said undivided two-thirds interest was, by force of said act, resumed in the United States. But the other undivided one-third interest in said lands, having been earned by the completion of the Alabama & Chattanooga Railroad, Congress had no power to declare forfeited; and it was not, in fact, included in the terms of the forfeiture act. By his homestead entry in 1894 the defendant, therefore, acquired a right to said undivided two-thirds interest superior to that of plaintiff. The duly certified copies of defendant's homestead application and of the receiver's certificate of entry, or receipt, were admissible in support of this right, and the trial court erred in excluding them. The certified copy of the official letter from the Commissioner of the General Land Office to the Register & Receiver at Huntsville, notifying the latter of the "cancellation of list 2 of lands selected by the Alabama & Chattanooga R. R. Company filed May 13, 1885," would, perhaps, have been competent evidence if accompanied by evidence tending to show that the lands in controversy were affected by the cancellation.—*Holmes v. State*, 108 Ala. 24. But no such evidence was offered, and there is nothing in the letter itself to indicate to what particular lands it referred. On its face, therefore, the letter was irrelevant and was properly excluded on a general objection.

To the introduction of the deed from Swann and Billups, trustees, to plaintiff the defendant objected on the ground that its execution by John A. Billups had not been proven, and it was not acknowledged by him as required by law. The certificate of acknowledgment reads: "The State of Alabama, County of ————. I,

[McCarver v. Herzberg.]

T. G. Williams, Judge of Probate, hereby certify that John A. Billups, whose names are signed to the forego-ing conveyance,'' etc., the remainder being in the plural form of the acknowledgment prescribed by the statute. There is nothing either in the caption or in the body of the acknowledgment, or in the signature of the officer, to indicate in what county it was taken and certified, nor is there anything in the deed or caption thereof, as cop-ied into the record, to indicate in what county it was executed ; and for this reason, it is insisted, the acknowl-edgment is invalid. It is the policy of the law to uphold certificates of acknowledgment when it is possible to do so, and not to permit conveyances to be defeated by mere technical objections to the certificate, if the sub-stance thereof complies with the form prescribed by the statute. For this purpose courts will, in proper cases, resort to well founded presumptions and to those rules of evidence which require them to take judicial cogniz-ance of certain facts not affirmatively proven. Courts will, for instance, take judicial notice of the various commissioned officers of the State, and of their official signatures, the extent of their authority, the dates of their commissions, and the date of the expiration of their respective terms of office.—*Cary v. State*, 76 Ala. 78 ; *Sandlin v. Anderson, Ib.* 403. The venue of the ac-knowledgment as stated was simply ''The State of Ala-bama.'' This is *prima facie* evidence that the acknowl-edgment was taken and certified by the officer within this State, and we judicially know that T. G. Williams was, at the time of the acknowledgment, probate judge of Pickens county. We know, then, that the acknowl-edgment was taken in this State by an officer authorized by statute to take and certify acknowledgments within the territorial area of his county. We may, therefore, indulge the presumption, in favor of the regularity and validity of official acts of this character, that the officer exercised his functions in this particular case within the limits of his territorial jurisdiction, that is to say, in Pickens county. A precisely similar acknowledgment was upheld in *Carpenter v. Dexter*, 8 Wall. (U. S.) 528, in which it was said : ''The words, 'State of New York,' present some definite locality. * * * * The com-

[Highland Avenue & Belt Railroad Co. v. Miller.]

missioner of deeds in New York had authority to act only in his county ; and it will be presumed, although the State be named, that the officer exercised his office within the territorial limits for which he was appointed." See also, *Rackleff v. Norton*, 19 Me. 274 : *Bradley v. West*, 60 Mo. 33 ; *People v. Snyder*, 41 N. Y. 397. The acknowledgment was sufficient, and the deed, having been recorded within twelve months from the date of its execution, was admissible in evidence without proof of its execution.—Code, 1896, § 992.

The evidence as presented in the record, shows title in the plaintiff to only an undivided one-third interest in the land sued for, and the court below erred, therefore, in rendering judgment in plaintiff's favor for the entire interest.

Reversed and remanded.

The foregoing opinion was prepared by Hon. ROBERT C. BRICKELL, late Chief Justice, before his retirement from the bench, and was adopted by the present court.