# HARTSHORN *vs.* WILLIAMS.

[TROVER AGAINST SHERIFF.]

1  *Hearsay inadmissible.*—In trover against a sheriff, for levying an attachment against a partnership on goods claimed by plaintiff under a purchase from one of the partners individually, the declarations of the other partners, to the effect that they had sold out their interest in the goods to their co-partner, are mere hearsay, and, therefore, incompetent evidence.

2. *Admissibility of parol evidence to prove absolute deed a mortgage.*—At law, it is not competent for the grantee of a deed, absolute on its face, to show by parol that it was intended to operate only as a mortgage ; but such evidence would be admissible for a creditor assailing the deed for fraud

3-4. *Validity of absolute deed intended as mortgage.*—A deed absolute on its face, but intended as a mere security for the payment of a debt, is fraudulent and void as to existing creditors ; and when its validity is attacked, in a contest between one claiming under it and a sheriff who levied on the property conveyed, the fact that it was intended as a mortgage, in connection with the *bona fides* of the debt, is not admissible to repel the idea of fraud.

5. *Sheriff's liability in trover.*—A right to the immediate possession of personal chattels, under a conveyance which is fraudulent and void as to the grantor's creditors, does not enable the grantee to recover in trover against a sheriff, for levying an attachment on the goods at the suit of the grantor's creditors.

6. *Trespass ab initio by abuse of legal process.*—If a sheriff levy an attachment, in favor of existing creditors of the grantor, on goods claimed by the grantee under a conveyance which is fraudulent and void as to such creditors, his subsequent sale of the goods, without an order of court, does not render him liable to the grantee as a trespasser *ab initio.* (STONE, J., *dissenting.*)

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. C. W. RAPIER.

THIS action was brought by Samuel H. Hartshorn against George W. Williams, to recover damages for the conversion of a stock of goods, on which the defendant, as sheriff, had levied an attachment. The plaintiff claimed the goods under a conveyance from James M. Hamilton, while the attachment levied on them by the defendant was against the firm of J. M. Hamilton & Co., of which said Hamilton was a partner. The plaintiff's conveyance, which was absolute on its face, and which was attacked for fraud by the defendant, recited as its consideration a

debt for $9,560 due to him from said Hamilton; and the evidence showed that this debt was really due from the firm of J. M. Hamilton & Co., and that the deed was only intended to operate as a mortgage to secure its payment. Contemporaneously with the execution of this deed, plaintiff gave Hamilton a power of attorney to act as his agent in the sale of the goods and the collection of the debts; and Hamilton was in possession under this power of attorney at the time the defendant levied on the goods. The goods consisted of "hardware and dry-goods, not of a perishable nature, nor liable to deteriorate or be destroyed before the meeting of the court to which the attachment was returnable, nor liable to induce any charge for keeping"; but the sheriff sold them, without an order of court, a few days before the return of the writ. A portion of the goods had belonged to the firm of J. M. Hamilton & Co.; but, on the dissolution of the firm, Hamilton claimed to have bought out the interest of his copartners, and to have added to the stock on hand by subsequent purchases on his own account. To prove said Hamilton's purchase from his copartners, "plaintiff offered in evidence the declarations of said retiring partners, made after their leaving, and while not in possession, but before the levy of the attachment under which the defendant justified, to the effect that they had sold out to Hamilton; which evidence the court rejected, on the ground that the declarants were competent witnesses; and the plaintiff excepted."

All of the other assignments of error are predicated on the instructions of the court to the jury, which are thus stated in the bill of exceptions:

"1. The plaintiff's counsel, stating that said deed was, in fact, intended only as a mortgage, and would be so used by plaintiff, asked the court to charge the jury, that notwithstanding such intention, and although such was its legal effect in equity; yet, as it purported on its face to be an absolute bill of sale, a court of law must treat and give it effect as an absolute bill of sale. This charge the court accordingly gave.

"2. The defendant having attacked said deed, as an

absolute conveyance, on the ground that it was without consideration and void as against the attaching creditor, the court charged the jury, that if they found there was an out-and-out sale, and that the debt recited in the conveyance had not been, and was not intended to be, discharged; and that the real object and consideration of said conveyance was only to secure plaintiff's debt, and to operate only as a mortgage,—then such object and consideration could not be shown by parol evidence in a court of law, and said conveyance, as an absolute one, would be void for want of consideration provable at law. To this charge the plaintiff excepted.

"3. The plaintiff asked the court to charge the jury, that when said deed is attacked as being without consideration, and as being fraudulent against creditors, because the debt in payment of which it was given was not discharged, then, to repel the idea of fraud, plaintiff may show that it was intended only as a mortgage, and that the debt which it was intended to secure was *bona fide*. This charge the court refused to give, as being inconsistent with the charge above stated which was given at plaintiff's request, and because it was given at his request.

"4. The plaintiff asked the court to charge the jury, that a mortgagee of personal property, claiming under a deed like that in this case, has the right to immediate possession; and if there be no other reason or impediment in the way of his suing, he may maintain trover against any one who has converted the property thereby conveyed. This charge the court refused to give, as being inconsistent with the charge already given at plaintiff's request, excluding all evidence of said conveyance being a mortgage, and because the same was absolute as elected to be treated by plaintiff; and plaintiff excepted to said charge.

"5. The plaintiff then asked the court to charge the jury, that where a sheriff levies an attachment on goods which are not of a perishing nature, nor liable to deteriorate or be destroyed before the meeting of the court to which the attachment is returnable, nor liable to induce any charge for keeping; but, without regard to this, and without any order of sale, he sells such goods only a few

days before the meeting of the court,—in such case, he becomes a traspasser, *ab initio*, and the attachment then ceases to be a protection to him, and (in the absence of other defense) the plaintiff is entitled to recover against the sheriff as a naked trespasser, although his purchase might have been void as against the attaching creditor. The court refused to give this charge, but instructed the jury, that it was not such an abuse of process as would make the sheriff a naked trespasser, nor prevent his justifying under the attachment ; to which charge, as well as to the refusal of the charge asked, the plaintiff excepted."

The other charges given or refused require no particular notice. All the rulings of the court, to which exceptions were reserved, are now assigned as error.

L. L. CATO, for the appellant.

PUGH & BULLOCK, *contra*.

WALKER, J.—The declarations of Gaston and Morris, to the effect that they had sold their interest in the partnership assets, were mere hearsay ; were, therefore, inadmissible as evidence, and were properly excluded by the court below.

2. The charge given by the court, to which the plaintiff excepted, asserts these two propositions : that parol evidence was not admissible, at law, to show that an absolute deed was intended to operate as a mortgage ; and that a deed of personal property, intended to be a mere security for a debt, would be void, "for want of a consideration provable at law." It is true that, at law, parol evidence is not admissible to transform an absolute deed into a mortgage; but it would be competent, for one assailing the deed for fraud, to show by parol the intention that it should operate as a mortgage. If the effect of this charge of the court was to exclude this view from the jury, it was not injurious to the plaintiff, who certainly had no right to vary the deed by such proof, and who could not have been benefited by so doing.

3. If an absolute deed was intended to be a mere security for the payment of a debt, it is fraudulent and void

as to existing creditors. The law is so settled, upon the clearest reasoning and authorities, in the case of Bryant v. Young & Hall, 21 Ala. 264.—Gregory v. Perkins, 4 Dev. & Bat. 50; Holcombe v. Ray, 1 Iredell, 340. We do not pause to consider whether, under the circumstances presented in the charge, the deed would be void "for want of a consideration provable at law." It is void for *fraud* under those circumstances. The important matter of the charge is, that the deed is void upon the facts supposed; and it could not injuriously affect any person, for the court to attribute its invalidity under the facts to a want of consideration, instead of fraud.

4. As the effect of showing that the deed was intended to operate as a mortgage was to establish fraud, it would, of course, have been improper in the court to instruct the jury, that that fact, in connection with the *bona fides* of the debt, was admissible to repel the idea of fraud. Consequently, the court did not err in refusing the first charge asked by the plaintiff.

5. We are not certain that the next charge refused by the court, numbered 4, might not have been refused on account of its ambiguity. We think the idea intended to be conveyed by it is, that the grantee of the deed, notwithstanding the design that it should operate as a mortgage, had a right to immediate possession; and the objection of a want of such right on his part being thus out of the way, and there being then no other reason or impediment to prevent his suing, the plaintiff might maintain trover against any one who converted the property. This charge, if given, would have authorized a verdict against the defendant, notwithstanding his conversion of the property had been rightful, because perpetrated by him as sheriff, in obedience to lawful process, in favor of the grantor's creditor, as to whom the deed was void for fraud. As a general proposition, the plaintiff may have had the right to the possession of the property, and a right to maintain trover for a conversion of it; and yet that right may have been destroyed, as to the defendant in this suit, by his reception, as sheriff, of process which the law required him to levy upon the property, because

the conveyance was fraudulent as to the plaintiff in the process.

6. It is well-settled law, that one may become a trespasser *ab initio*, by the abuse of an authority given to him by law.—Six Carpenters' case, as reported in Smith's Leading Cases, vol. 1, p. 62, and notes; Wright v. Spencer, 1 Stewart, 576. Several different reasons for this technical rule of law are assigned by the books; but the most satisfactory reason is that given in Bacon's Abridgment, (*Trespass*, B, 451,) where it is thus stated: "Where the law has given an authority, it seems reasonable that the law should, in order to secure such persons as are the objects thereof from abuse of the authority, when it is abused, make everything done void, and leave the abuser in the same situation as if he had done everything without an authority." The reason and policy of the rule fail in criminal cases, and hence its applicability to those cases is denied.—1 Smith's Leading Cases, 62, note; State v. Moore, 12 N. H. 42.

The authority bestowed by the law upon the defendant did not authorize him to interfere with any of the rights of the plaintiff in this case, or to affect any title which the latter had as against the plaintiff in the process. The plaintiff in this case could not be injured by an abuse of the authority. If he has any cause of action against the defendant, it was complete in the instant of the levy; and the amount of his recovery could be neither increased nor lessened by any subsequent irregularity of action on the part of the defendant. We conclude, therefore, that the plaintiff is not within the reason of the rule, and he cannot invoke its aid. There would be an absolute absurdity in the application of the rule to such a case as this. The *gravamen* of the plaintiff's cause of action is, that the defendant has levied process against another person on his property, and that the law gave him no authority whatever for the act; while, in the charge which he asks, he assumes the ground, that the defendant did have authority, derived from the law, to take the property in the outset, but that, in consequence of the subsequent abuse of that authority, that lawful act became a trespass.

We do not intend to say, that there is no conceivable case, in which a sheriff may not, by an abuse of process, become a trespasser *ab initio*, as to one not a party to the process. A sheriff who, by virtue of process against one tenant in common of a chattel, levies upon the chattel, and sells the entirety—the share of the stranger to the process, as well as that of the defendant—has been held a trespasser *ab initio*, as to the tenant in common not a party to the process.—Melville v. Brown, 15 Mass. 82. In that case, the law gave the sheriff an authority to take possession of the entire chattel, and to keep it for the purpose of executing the process; and thus bestowed an authority which affected the tenant in common not a party to the process, and placed him in a situation to be injured by an abuse of that authority. There may be other cases of kindred character; and all such cases fall without the principle of this decision.

In McAden v. Gibson, 5 Ala. R. 341, it was held, that a sheriff's omission to return an attachment deprived him of the right to justify under it, when sued by one not a party to the process. The distinction between that case and this is clearly pointed out by Mr. Justice Bayley, in Shorland v. Govett, 5 Barn. & Cress. 485. The return of the mesne process, or an excuse for the omission to return it, is necessary to constitute the justification, and is a necessary averment in the plea of justification; but it is not so as to the abuse of the authority given by the process. The sheriff makes no averment in his plea of justification, denying an abuse of the authority: that must be brought forward by a replication; and we decide that no party can avail himself of an abuse of authority, when he is not interested in the exercise of it. The rule in McAden v. Gibson is one of mere policy, and adopted in this State upon the weight of authority; and we do not think its extension is demanded by the interests of society, or consistent with justice. Under the authority of that case, the mere *omission* to return process converts the officer into a trespasser *ab initio ;* while it is well settled, in all the cases, that an *abuse* of authority must consist of some positive, affirmative act, or of a misfeas-

ance, as contra-distinguished from a nonfeasance, (see the Six Carpenters' case, *supra;*) thus demonstrating, that the decision in McAden v. Gibson stands upon a different ground, and is not based upon the rule applicable to a case where an abuse of authority is relied on to convert a lawful act into a trespass.

The sheriff had the right to levy the attachment, if the conveyance to the plaintiff was fraudulent. The process in his hands clothed him with the right of the plaintiff therein to assert the fraud in the conveyance. His connection with the title was thus so made as to authorize him to assail the title of the defendant's grantee. The right which the process thus gave the sheriff could not be taken away by a misfeasance, which, peradventure, may have been the result of mere mistake, and which could not in any event affect the plaintiff. We cannot perceive either reason or justice in imputing to the sheriff's misfeasance the effect of converting a lawful into an unlawful act, as to one who has no interest whatever in the question whether the sheriff does or does not commit a misfeasance.

The questions raised by the other charges asked and refused, are covered by what we have already said. Upon the principles hereinbefore laid down, there is no error in any of those rulings of the court prejudicial to the plaintiff.

The judgment of the circuit court is affirmed.

STONE, J.—I am not able to agree with my brothers, in one of the conclusions attained by them. In their opinion, they assert the proposition, that the sale of the goods attached, made as it was without any order therefor, had the effect of rendering the sheriff, as against the defendant in attachment, a trespasser *ab initio;* but that the grantee of the defendant cannot take advantage of this rule of law. Whether we regard this question as affected by the adjudged cases, or the reasons on which the rule rests, I think their conclusion alike indefensible.

The following authorities are directly in point, to show that a stranger to the process, whose interests have been injuriously affected by an abuse of such process, may in-

voke the application of the rule established in the Six Carpenters' case : Waddell v. Cook, 2 Hill, (N. Y.) 47; Melville v. Brown, 15 Mass. 82; McAden v. Gibson, 5 Ala. 341. See, also, note to Waddell v. Cook, *supra*, and note to the report of the Six Carpenters' case, 1 Smith's Leading Cases.

I admit the case of McAden v. Gibson does not rest on a *positive* act of abuse. The disability resulted from a mere failure to perform an official duty. In general, a mere *failure* to act does not render a party a trespasser from the beginning, although he received his authority to act from the law. This, however, to my mind, is an argument against the distinction asserted by the majority of the court. Presenting the naked proposition deduced from that decision and this, a sheriff, who is guilty of a *nonfeasance* in failing to return process, forfeits the protection afforded by that process, and strangers may take advantage of such forfeiture; but, if the sheriff take a further step, and be guilty of a *malfeasance* in selling property without any authority therefor, no one but the defendant in such process can be heard to complain. The principle settled in the Six Carpenters' case, which principle underlies all these decisions, gives much greater efficacy to *malfeasance* than to *nonfeasance*.

I think the opinion of my brothers gives undue weight to the word "object," as found in Bacon's Abridgment; and in the absence of any adjudged case which asserts the distinction contended for, I am unwilling to disregard the direct adjudications above cited.

In the second place, I think the opinion of the majority of the court rests on an erroneous principle, in this, that under my construction of it, it makes the sheriff's abuse of authority to operate a privilege in the defendant in the process, and not a disability in the officer. The latter is, I think, the true principle.

I admit that, if Hamilton conveyed his property to Hartshorn, with the intent to delay, hinder or defraud his creditors, such conveyance would be invalid against such creditors. In such case, the sheriff, armed with legal process issued on such debt, would be also armed with

the creditor's right to regard the conveyance as fraudulent; and these facts, without more, would furnish to him a perfect defense to any action brought by the grantee in such deed.

This defense does not rest on the ground that the deed is *void*, and hence inoperative for all purposes. It is only voidable; voidable as against creditors and purchasers of the grantor, but not as against trespassers. Suppose a trespasser should take property, and, when sued for his trespass, should plead that the plaintiff held the goods under a fraudulent conveyance from another. Every one will admit, that the plea would oppose no bar to the action. The sheriff, by abusing his process, forfeits the protection afforded him by that process, and becomes a trespasser. Yet, under the opinion of the majority of the court, this trespasser is allowed to justify his illegal act, by showing fraud in a deed with which he cannot · connect himself. An act which is one and indivisible, is, as to Hamilton, a trespass, and punished as such; but, as to Hartshorn, it is lawful and praiseworthy. The law shields the fraudulent grantor, but affords no protection to his grantee. Does not this principle, in effect, allow a mere volunteer—a wrongdoer—to raise the question of fraud in the deed? I admit if the sheriff stood in the position which, independent of the authority under which he seized the goods, would permit him to insist on fraud to avoid the deed from Hamilton to Hartshorn, the distinction drawn by my brothers in this case would be well taken. But he stands in no such position. On the contrary, his only excuse for the seizure lies in the process of attachment; and when, by its abuse, he made himself a trespasser, I think he should be held to all the accountabilities of a trespasser.

The result which I have above pointed out, will follow, whether the deed be actually or constructively fraudulent. Suppose, without any intention to defraud, property should be conveyed by gift; afterwards, a levy may be made on this property to satisfy an antecedent debt of the donor; no matter what irregularities the sheriff may per-

petrate, the donee cannot hold him to his accustomed accountability.

In any point of view, I can find no principle, or adjudged case, justifying the distinction contended for; and I feel it my duty to withhold my assent from the establishment of such a principle. If the rule established in the Six Carpenters' case be a bad one, let it be overturned or qualified, as was done by statute in England.—See Phil. Ev. (3d ed. by Van Cott,) part II of notes, pp. 792–3.