# Nathan Brothers *v.* Shivers.

*Trover by Consignor against Agent of Common Carrier and Purchaser for Conversion by Illegal Sale of Goods held for Charges.*

1. *Sale by common carrier of freight; good faith and diligence required.* An agent of a common carrier is not only held to good faith in making a sale under the statute of packages held for freight, but also to reasonable

[Nathan Bros. v. Shivers.]

diligence in ascertaining and giving notice of the contents of the packages.

2. *Same; what reasonable diligence implies.*—Reasonable diligence in such case requires that the agent must examine all external indicia and marks on or about the packages, and all other sources of information, reasonably within his reach ; but he is neither required nor authorized to break or open the packages for the purpose of ascertaining their contents.

3. *Same; when agent and purchaser liable to owner.*—If the agent knows the contents of the packages, or has good reason for believing what they are, and, withholding such knowledge or well-founded belief, he makes the sale to a favorite having superior knowledge, and at a nominal price, this constitutes a fraud which subjects the perpetrators to an action for damages, at the suit of the party injured.

4. *Same; diligence and good faith, questions for the jury.*—Whether the agent knew, or could have learned, or had just grounds for believing what were the contents of the packages, and whether he acted in good faith in giving the notice prescribed by statute, and in making the sale, are questions for the jury, under appropriate instructions from the court.

APPEAL from Hale Circuit Court.

Tried before Hon. GEORGE H. CRAIG.

This was an action of trover, brought by Nathan Bros. against J. M. Shivers and A. M. Fowlkes, to recover damages for the alleged conversion of two barrels, containing seventy-nine 17-100 gallons of whiskey; was commenced on 30th July, 1879, and was tried on the plea of the general issue, with leave to give in evidence any special matter of defense, the trial resulting in a verdict and judgment for the plaintiffs.

As shown by the bill of exceptions, Nathan Bros. shipped from Philadelphia, Pennsylvania, on the 30th March, 1878, the two barrels of whiskey in controversy, consigned to A. Stollenwerck, at Greensboro, Alabama. At that time the Selma, Marion & Memphis railroad, a connecting line, running from Marion Junction, in this State, to Greensboro, was in the possession of the defendant Fowlkes, as receiver, by the appointment of the Chancery Court of Perry county, and was by him, as such receiver, operated as a common carrier under the orders and direction of said court. On 6th April, 1878, the whiskey was received at Marion Junction and transported over said railroad to Greensboro. On 8th April, 1878, the consignee was notified of its arrival, and of the charges thereon; but he refused to receive it, or to pay the charges, on the ground that he had never ordered it consigned to him. The two barrels were described in the "through freight list or bill of lading" as "2 Bbls. Wet." No demand having been made for these barrels, and the freight not having been paid thereon, Shivers, acting under the direction of Fowlkes, on the 4th of December, 1878, advertised them, with other articles held for charges, for sale for the payment of the charges thereon, in a newspaper published at Greensboro; and on the 3d January, 1879, the day

[Nathan Bros. v. Shivers.]

appointed for the sale, they were sold by Shivers at the depot at Greensboro, at public outcry, and were bid in by him for Fowlkes at $12.50, the amount of the charges and expenses of sale. In the advertisement of the sale the barrels were described as "two barrels, wet, consigned to A. Stollenwerck." On 11th January, 1879, the two barrels were shipped to Marion, Alabama, for Fowlkes, and on the same day were sold by him to a party at Marion, as containing fifty-seven gallons of whiskey, at $2.00 per gallon. The whiskey was shown to have been worth at Greensboro $3.00 per gallon.

The plaintiff also introduced evidence tending to show that both defendants knew or had information of the contents of the barrels prior to the sale. Both Shivers and Fowlkes were examined as witnesses on their own behalf, and they testified that they had no knowledge of the contents of the barrels until after the sale, Fowlkes further testifying that "his information in respect thereto was confined to that afforded by the through freight list or bill of lading which came with the said property." The defendant Shivers further testified, that on the 4th of December, 1878, he again demanded of Stollenwerck, the consignee, the charges due on the barrels, and that Stollenwerck refused to pay said charges, or to receive the barrels, "and gave as his reasons therefor, that he had never ordered them to be shipped, and that they contained stuff which had to be 'doctored' before it could be sold, and he did not wish to deal in it. Until this conversation witness had no information of the nature of the contents of said barrels, except such as was imparted by the description in the bill of lading which came with them, nor did he know that Nathan Bros. were the consignors thereof. Upon hearing that they were consignors, he immediately, on the same day, gave notice to, and made demand on them for said freight and charges by postal card mailed to them at Philadelphia." He further stated that he saw on said barrels no such brands as showed their contents to be whiskey; that whiskey barrels were very frequently used for the shipment of other liquids, such as mineral water, vinegar, and the like, and that the brands or marks on such barrels very often do not show their real contents. It was also shown by the defendants, that it was the usage and custom of common carriers, in advertising freight for sale, to describe it as it was described in the freight list or bill of lading.

Exceptions were reserved by the defendants to charges given by the Circuit Court, and to charges requested by them and refused by the court. The rulings of the Circuit Court in its instructions to the jury are, for the purposes of this report, sufficiently stated in the opinion.

[Nathan Bros. v. Shivers.]

THOS. SEAY, for appellants.—(1) The sale was fair and in exact accordance with the terms of the statute (Code of 1876, § 2141); and the sale was not made until after the goods had been lying in the depot for over six months. (2) The description of the property in the advertisement of sale was the only description that could have been obtained without committing a conversion of plaintiff's property; and it was in exact accordance with the bill of lading, and with a well recognized and established custom. (3) If the law be as charged by the court below, a very great and unnecessary hardship rests upon common carriers; the requirement that every package shall be examined, and the responsibility incurred by an inaccurate description of the goods would very much embarrass the operation of common carriers, especially in the centers of trade.

JAS. E. WEBB, *contra.*—(1) The sale of the whiskey was illegal, because a carrier's power to sell goods for freight is purely statutory.—Redfield on Carriers, § 2³3. For his power to sell, the carrier must rely on our statutes.—Code 1876, §§ 2140–1. This statute, being an inroad on the common law, must be strictly construed, and strictly pursued.—30 Ala. 591; 20 Ala. 189; 20 Ala. 544; 19 Ala. 43. (2) The sale was illegal, because no advertisement *describing* the property was made. The advertisement of "two barrels wet" did not convey to the mind of bidders the least idea as to the character of what was to be sold. The purpose of the statute, as declared in *Western Railroad Co. v. Rembert,* 50 Ala. 25, is to authorize a carrier to be released from responsibility "without detriment to the owners or consignee." (3) Trover lies in this case. See 2 Hilliard on Torts, pp. 101 and 110; 21 Ver. 204; 44 Maine, 491; Redf. on Carriers, p. 220, § 298; *Chandler v. Belden,* 18 John. 157; *Gracie v. Palmer,* 8 Wheat. 605; 2 Wait's Act. and Def. pp. 58 and 61; *Briggs v. Boston R. R. Co.,* 6 Allen, 246; 33 Me. 438; Angel on Carriers, § 431, p. 364, and authorities there cited; Redf. on Carriers, §§ 706, 710, and authorities there cited. (4) Nathan Bros. were the proper parties to bring the suit.—Angel on Carriers, § 495, note 6, p. 414, note 1, p. 415, note 3, p. 415, and authorities cited; *Swan v. Shepperd,* 1 M. & R. 224; 2 Hilliard on Torts, pp. 443–4, and authorities cited.

STONE, J.—In form, the railroad, in the present case, appears to have pursued the letter of the law, in the matter of advertising and selling the packages or barrels, for the payment of the freight charges. We say the railroad, for all this was the act of the railroad, although in fact done through its agents or employes. To the railroad corporation the freight charges were due, the freight was in the railroad's depot, and the cor-

poration, or its appointee or agent, could make the sale. Cor-poration act by their agents or officers.—Code of 1876, §§ 2140 *et seq.*

But in making such sale, good faith and reasonable diligence must be observed. The agent or agents entrusted with the duty, must have employed reasonable diligence in ascertaining the contents of the barrels; and if they had information of what the contents were, or could have acquired such information with reasonable diligence, then it became their duty to give notice of it, so as to effect the best sale they could. This was their duty to the owners of the freight, and to the railroad corporation. If, knowing the contents of the barrels, or having good reason for believing what they were, the agent selling withheld such knowledge, or well founded belief, and the effect was that the barrels were sold to a favorite, having superior knowledge, and at a nominal price, this was a fraud which would subject the perpetrators of it to an action for the damages, at the suit of the party injured. The law will not sanction or excuse such faithlessness in an agent.—*Sarjeant v. Blunt,* 16 Johns. 74; *Wright v. Spencer,* 1 Stew. 576.

The Circuit Court ruled, in this case, that the advertisement under which defendants effected the sale was insufficient, in that it did not describe the contents of the barrels; and that in order to give a proper description, "the defendants had the right to examine the contents of the barrels." The description given in the advertisement was "two barrels wet." The testimony was, that this was the description given of the barrels in the bill of lading which accompanied them. We feel justified in inferring that this description was intended to indicate the contents, as distinguished from dry barrels. These were wet barrels, in the classification of freight. In two respects the Circuit Court erred: *First,* in holding, as matter of law, that the advertisement was insufficient; and, *second,* in ruling that the defendants were authorized to examine the contents of the barrels. As we have said, reasonable diligence and good faith were exacted. Reasonable diligence implies that the agent should have examined all external indicia and marks, the odor of the barrels, if they emitted an odor, and all other sources of information, reasonably within his reach. If, from these sources, or from any information he may have received, he knew, or could have known the contents with proximate accuracy, then his conduct in advertising as he did was culpable. He should have informed the public of all he knew, or could have learned with reasonable diligence. He stood in the relation of agent, both to the railroad corporation and to the owner of the barrels, and he owed to each of them good faith. He had no authority to open the barrels to ascertain their contents.

[Cowley v. Shelby, Trustee.]

Whether he acted with reasonable diligence in ascertaining the contents—whether he knew, could have learned, or had just grounds for believing what were the contents, and whether he acted in good faith in giving the notice and making the sale, were questions for the jury, under appropriate instructions embodying the principles above declared.

Shivers testifies he bid in the barrels for Fowlkes, at whose instance he advertised and made the sale. Being his agent or employe both to sell and buy, we need not inquire as to the separate liability of Fowlkes. The same duties and liabilities rested on the latter, as did on the mere instrument by which he effected the sale.

Reversed and remanded.