# Brock *et al. v.* Berry, Demoville& Co.

*Bill to Set Aside Fraudulent Conveyance.*

(Decided December 17, 1901.)

1. *Sale of personal property under process; liability of officer.*—An officer, selling personal property under attachment, is guilty of a breach of duty in making the sale at a place other and remote from the place named in the advertisement.

2. *Sale of personal property at place other than as advertised; notice of sale under sections 1905 and 1906 of the Code.*—A sale of personal property under process at a place different and remote from that mentioned in the advertisement of sale is without legal notice, under sections 1905 and 1906 of the Code.

3. *Sale of personal property, place of.*—Sales of personal property under process should always take place at or near the place where the property is, in order that bidders may see and examine the property.

4. *Sale of personal property in mass, under process.*—A sale of personal property under process, in mass, rather than in parcels, can rarely be justified, as such property will ordinarily sell to better advantage in parcels.

4. *Sales; what not proper expenses of sale.*—A charge for taking and typewriting the inventory of goods sold under attach-

[Brock *et al* v. Berry, Demoville & Co.]

ment is not a legitimate expense of the sheriff in making the sale.

5. *Bill to set aside fraudulent conveyance and to charge sheriff and attachment creditors for violation of process, maintainable.* A bill filed by the creditor of a mortgagor, seeking to set aside as fraudulent a mortgage of personal property, because of secret agreements between the mortgagor and mortgagee as to retention of possession of the property by the mortgagor, withholding the mortgage from record, etc., and making the mortgagor and mortgagee parties, may also join the sheriff and attaching creditors as parties defendant and seek recovery against them as trespassers for violations of the attachment process.

6. *Trespasser; when plaintiff in attachment suit not liable as, for abuse of process.*—Where the plaintiff in an attachment suit neither indemnifies the officer, nor directs the act or acts for which the officer is subsequently subjected to liability, nor is present at the levy, he cannot be held liable as a co-trespasser with the officer.

7. *Same.*—Where the plaintiff in an attachment suit never gave the sheriff any directions about the levy or sale and was not present thereat, and, after the levy, only requested the officer to take the goods out of his, plaintiff's, house, he cannot be held liable with the sheriff for any misfeasance or neglect causing a depreciation in the value of the goods, or as having been instrumental in having the goods attached.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

The bill was filed by Berry, Demoville & Co., as a creditor of Cross, against T. M. Cross, Mattie L. Young, S. P. Ryan, L. P. Troup and John L. Brock, and sought to set aside as fraudulent a mortgage from Cross to Young upon certain store fixtures and a stock of drugs, goods, wares and merchandise in Decatur, Alabama, as well as upon any goods that might thereafter be purchased and added to the stock before the debt was paid. The fraud alleged consisted in an alleged agreement between Cross and Young that Cross should remain in possession of the merchandise and other property and use them as his own, as well as buy, sell and replenish the stock, and that the mortgage should attach to all after-acquired goods; and in the fact that Cross did re-

[Brock *et al* v. Berry, Demoville & Co.]

main in possession and use of said property for three years after the execution of the mortgage and for two years after the law day thereof, buying, selling, replenishing and disposing of the proceeds of sale as he saw fit, the mortgagee making no effort to foreclose, but allowing him to contract debts upon the faith of his ownership of the stock, and strengthening such presumption of ownership by cancelling and surrendering the mortgage to Cross. The date of the execution of the mortgage was January 31st, 1895, and the debt thereby secured is described as $600, evidenced by six promissory notes of Cross to Young, for $100 each, all dated January 22d, 1895, and maturing one year after date with interest from date. The mortgage provided that, upon failure of the mortgagor to pay the notes when due, the mortgagee might take possession of the property and sell the same to the highest bidder for cash, etc. There were other averment of fraud upon the part of the mortgagor and mortgagee which are not necessary to an understanding of the points decided.

It was further shown by the bill that the defendants, Troup, as administrator of B. F. Cross, deceased, and Brock, had sued out an attachment against said T. M. Cross to enforce landlord's liens for rent, which had been levied by the defendant Ryan, as sheriff, "on the stock of drugs, druggist supplies and sundries belonging to T. M. Cross, situated in the brick store on corner of Bank and Church streets in Decatur, known as the Cross Corner;" that afterwards these drugs, goods and supplies were sold by the sheriff in mass for $245, the sale being conducted in the back room of a two-story building nearly a block distant from the "Cross Corner," in which the sale was advertised to be had; that the goods were removed to this back room by the sheriff after they were levied on; that the soda fountain and attachments were not removed, but at the time of the sale were in the store at Cross' Corner. The defendant Brock, after the levy, had requested the sheriff to "take the goods out, as he wanted his house" (Cross' Corner). The store in which the sale took place was badly lighted, and the goods were greatly scattered and

7s

[Brock *et al* v. Berry, Demoville & Co.]

disarranged and covered with dirt and dust. It was alleged that the goods were reasonably worth $1,000, and, if sold in parcels or separately at the place advertised, would have brought $750. It was sought to hold these attaching creditors and the sheriff liable on account of the alleged abuses of process mentioned. The opinion sufficiently states the evidence. Upon submission on the pleadings and proof the chancellor granted the relief prayed, set aside the mortgage, and declared the defendants, Troup and Brock, jointly liable with the sheriff for the value of the goods, and ordered a reference. The defendants Brock, Troup and Ryan appeal.

D. W. SPEAKE and L. P. TROUP, for appellant.— (1) The complainants have no such interest in the goods as authorizes the maintenance of the suit by them.—*Hartshorn v. Williams*, 31 Ala. 149; *Wright v. Spencer*, 1 Stew. 576. (2) It is not shown by clear and convincing proof that complainants were damaged by the misfeasance complained of.

E. W. GODBEY, for appellee.— (1) The action of the sheriff in advertising to sell at "Cross' Corner," and afterwards removing the goods to a distant room and there selling, without re-advertisement, was a gross abuse of process, rendering the sheriff liable for more than the sum realized.—12 Cyclo. Plead. & Pr., 39; 22 Am. & Eng. Ency. Law, 594, note 2; *Wright v. Spencer*, 1 Stew. 576; *Hall v. Ray*, 94 Am. Dec. 440; 2 Freeman on Exec., §§ 308, 602; 2 Jones on Mortg., § 1852; 31 L. R. A. 339; *Murphy v. Hill*, 77 Ind. 129; *Klopp v. Witmoyer*, 82 Am. Dec. 561. (2) The sale of the goods in bulk was improper.—*Anniston Pipe Works v. Williams*, 106 Ala. 324; *Barbee v. Scroggins*, 28 S. E. Rep. 259, 262; *Ray v. Womble*, 56 Ala. 32; *Schroder v. Young*, 161 U. S. 334; *Holdsworth v. Shanon*, 21 S. W. Rep. 88. (3) The sale of the soda fount was not justified. *Barbee v. Scroggins*, 28 S. E. Rep. 262; 12 Ency. Pl. & Pr., 41; *Linnendell v. Doe*, 14 Johns. 222; *Waring v. Loomis*, 4 Barb. 484; 65 Pa. St. 242; 22 Cyclo. Law, 594, note 2; 12 Cyclo. Law, 213, note 4; 113 N. C. 460;

87 Me. 167; *Nathan v. Shivers*, 71 Ala. 121. (4) The
bill properly sought recovery against the sheriff and
the plaintiffs in the attachment suits.—2 Freeman on
Exec., §§ 305, 302; *Rogers v. Cleveland M. Co.,* 31 L. R.
A. 335; *Swain v. Lynd,* 76 N. W. 959; 12 Am. & Eng.
Ency. Law, 238, note 3; *Wade v. Bradford,* 2 Ala. 682;
*Nathan v. Shreves,* 71 Ala. 121.

HARALSON, J.—1. As to the liability of the sheriff
for selling the property under the circumstances and con-
ditions alleged, Mr. Freeman says, as to the proper
notice of sale: "So far as the courts have spoken upon
the subject, they have held that the selling of property
under execution by an officer without previously giv-
ing the notice of sale required by the statute, is such
misconduct that the officer is no longer entitled to the
protection of his writ. The result of this must be, that
if sued in trespass, his defense cannot rest upon the
process, nor can it be used in diminution of damages."
2 Freeman on Ex., p. 1659, § 286.

In *Wright v. Spencer,* 1 Stew. 577, this court, touch-
ing this matter said: "A misfeasance is the improper
performance of some act which might have been law-
fully done. The defendant here [the sheriff] had the
right to take and sell the property, but was bound to
do it as directed by law. If, then, he sold without the
legal advertisement, it was the improper performance
of an act which might have been lawfully done, and he
was, according to strict definition, guilty of misfeas-
ance. By this he was dismantled of his protection, and
made a trespasser from the beginning. There can be
no question but that he was liable to the action of tres-
pass."—*Nathan v. Shivers,* 71 Ala. 121; *Hartshorn v.
Williams,* 31 Ala. 154.

Connected with this complaint, and interwoven with
it, is the averment and proof, that the goods,—other
than the soda fountain, which latter article was not
mentioned at all in the advertisement of sale which was
made,—were sold by the sheriff at a place other and
different and remote from the place at which they were
advertised to be sold. The result is, that, having re-
gard to the purpose of an advertisement of sale, such as

the law requires, the goods were sold without legal no-
tice.—Code, §§ 1905, 1906.   It was the duty of the
sheriff to have advertised the time and place of sale,
and to have sold at the place designated in the notice.
Certainly, it was a violation of duty, to advertise to sell
at a designated place, and, afterwards, make the sale
to another and remote place.—2 Freeman on Ex., §§
290, 302; Croker on Sheriffs, § 484.

Furthermore, the soda fountain was not present, with
the other goods, when they and it were sold, but nearly
a block away in the store where it was levied on, and
not in view of the sheriff, bidders or those present at
the sale.   The sales of personal property under execu-
tion should always take place, at or near the place where
the property is, when sold.   Such sales must result in
some, if not great sacrifice of the property, unless those
present desiring to buy have opportunity to see and
examine the property offered for sale.—2 Freeman on
Ex., § 290, and authorities in n. 4; Murfree on Sheriffs,
§ 994; Croker on Sheriffs, § 493; *Andrews v. Keith,*
34 Ala. 728; *Foster v. Mabe,* 4 Ala. 402.

2.   The evidence shows, that the property was sold
in mass, including said soda fountain, or in what is
called a "lumping sale," which, in a case of sale of per-
sonal property under execution, can rarely be justified.
Croker on Sheriffs, § 495; 2 Freeman on Ex., § 296;
*Anniston Pipe Works v. Williams,* 106 Ala. 324.   The
evidence tends to show, that by this character of sale,
the property brought much less than it would have
brought, if it had been properly offered in parcels.

3.   The $36 for taking and typewriting the inventory
of the goods, was properly decided not to be a legiti-
mate expense charged by the sheriff in making the sale.
*Kahn v. Locke,* 75 Ala. 332; *Smith v. Huddleston,* 103
Ala. 223.

4.   It is said the complainants have no right to main-
tain this bill, since they were strangers to the suits
in attachment.   That would be true, if they were mere
intermeddlers.   But they filed this bill, on April 6th,
1898, to set aside an alleged fraudulent mortgage on the
property conveyed by Cross to Mrs. Young, afterwards

levied on by the said Troup and Brock, and, as inci-
dental to the setting aside of the mortgage as fraud-
ulent, and without disputing said attachment liens, if
established, but allowing them to be paid, to hold the
sheriff and the plaintiffs in attachments liable for the
value of the goods, above the attachment liens, on ac-
count of their alleged violations of process. The filing
of the bill, gave complainants a lien, if established, on
the property from the date of its filing; and while they
were not parties to the attachment proceedings, they
show that as creditors of the defendant in attachment,
they had rights dependent upon and growing out of the
sale. If the sale had been properly conducted, as they
claim,—said mortgage being set aside for fraud,—the
property levied on would have sold for enough to dis-
charge the prior attachment liens, leaving a surplus suffi-
cient to pay their debt, or the greater part of it, and this
the evidence tends to show. Mr. Freeman says of per-
sons occupying the attitude of complainants, "Persons
not parties to the action may have rights dependent
upon or growing out of the sale; and if so, they are not
bound to remain idle and uncomplaining, while their in-
terests are irregularly and perhaps fraudulently sac-
rificed. They may have acquired liens on the same
property, subordinate to the lien of the plaintiff's writ,
or have taken a transfer to which such lien is para-
mount. In that event, they are the real parties in in-
terest, and may institute proceedings to vacate the sale."
2 Freeman on Ex., § 305.

The complainants could not well have moved to va-
cate the sale until they had established their lien or
title, which they could not do, until they established the
invalidity of said mortgage; and having moved in
equity,—as complainants were entitled to do,—to set
aside said mortgage for fraud, that court became com-
petent to consider and adjudicate all questions con-
nected with it.

5. But, were the plaintiffs in attachment, Troup and
Brock, joint trespassers with the sheriff, and liable,
like him, for the wrongful execution of the process? On
this question, Mr. Freeman says, supported as seems
by reason and authority: "When the plaintiff places

his execution in the hands of an officer for service, he is presumed to intend that no action shall be taken thereunder not authorized by the terms of the writ.   The sheriff may seize the property of a stranger, or do any other unauthorized act, without thereby creating any liability against the plaintiff, because the plaintiff is not presumed to have directed or ratified the illegal proceeding. .But this presumption may be rebutted.   The injured party may show that the plaintiff was a cotrespasser with the officer, and may thus make both responsible for their abuse of the writ.   Where the plaintiff is present at the levy, or advises or directs.it to be made, he is a co-trespasser with the officer."2 Freeman on Ex., § 273.   The same author again observes (section 303) touching the same matter, "An officer, upon any question of doubt arising, has the right to ask the plaintiff for instructions and to demand indemnity in case the act insisted upon by the plaintiff may expose the officer to liability.   When, however, the plaintiff neither indemnifies the officer, nor directs the doing of the act or acts for which the officer is subsequently subjected to liability, the plaintiff cannot be held answerable." *Burns v. Campbell,* 71 Ala. 271; *Lienkauf v. Morris,* 66 Ala. 406.

The evidence is wanting to show that the defendant, Troup, ever did anything more than sue out his attachment and place the writ in the hands of the sheriff.   It is not shown he ever gave the sheriff any directions or instructions about the levy or sale, or that he was present at the sale.   The same thing is practically true of the defendant, Brock.   The only thing he is shown to have done was,—as deposed by the deputy sheriff, Turley, —that after the levy,—to state it in his own language, "he [Brock] afterwards told me to take the goods out of the house they were in, as he wanted his house; he wanted it, I think, by the 15th [of April]."   We do not find this request of Brock, made of the sheriff, to be such as to hold him liable for the alleged abuse of process by the sheriff.   It was no interference by him with the process, and, at most, was a request which the sheriff was not bound to obey; and that officer might

[Meyrovitz *et al.* v. Glaser, Kuder & Ottensosser, *et al.*]

have obeyed it, without being guilty of any of the alleged irregularities in the sale. There was no necessary causal connection between this request, and the injury the sheriff is shown to have done the complainants growing out of the manner in which he sold the goods. The attachments were sued out, as has appeared, the 28th March, 1898, and this bill was afterwards filed, on April 6, 1898.

The chancellor in his opinion, says, "Said Troup and Brock having been instrumental in having the goods attached by the sheriff, are liable, together with the sheriff for any misfeasance or neglect causing a material depreciation in the value of the goods." He decreed accordingly. In this, we apprehend the learned chancellor fell into error. The suing out of the attachments to recover their rents by said parties was a legitimate proceeding, done more than a month before this bill was filed, and in no way interfered with any legal or equitable right of the complainants.

The decree below in so far as it holds Troup and Brock liable to the complainants for the value of the goods sold by the sheriff, is reversed, and in so far as it holds Ryan, the sheriff, liable, is affirmed.

Reversed in part, affirmed in part, and remanded.