# Ryan, *et al.*, *v.* Young.

## *Trover.*

(Decided July 6th, 1906. 41 So. Rep. 954.)

1. *Appeal; Harmless Error; Ruling on Demurrer.*—Where defendants were allowed to make proof of the facts alleged in a rejoinder, it was harmless error to sustain a demurrer thereto.

2. *Trover and Conversion; Pleading; Issues.*—With the exception of a release, the plea of not guilty in trover puts in issue every matter pleadable in bar.

3. *Sheriffs and Constables; Attachment Levy; Trespass Ab Initio.* —The fact that the sheriff, subsequent to the time he attached the goods, sold them at a place other than that advertised, did not render him a trespasser ab initio and thus liable to the mortgagee, if the mortgage was fraudulent as to creditors.

4. *Same; Levy of Attachment; Return of Writ; Sufficiency.*—It appeared in evidence that during the term to which the attachment was returnable, the sheriff applied to the court for an order to sell the property levied on, on grounds stated therein, and that the application to sell was offered in evidence, reciting the fact that the attachment had been levied and return made thereon; and it further appeared that the court granted said application, that the sale was advertised and made under the order; The sheriff testified that after the sale under the order, he returned the writ into court with the money; it is apparent that the evidence referred not to the official return but the paper itself and it sufficiently appears that the sheriff made return of the writs to the term to which they were returnable.

5. *Evidence; Admissibility; Documentary Evidence; Preliminary Authentication.*—It being shown without objection that certain

[Ryan, et al. v. Young.]

writs of attachment were issued and that the sheriff seized certain goods under them, this was sufficient preliminary proof of the authenticity of the writs to warrant their admission in evidence.

6.  *Same; Judicial Knowledge; Official Signatures.*—The courts judicially know whether the officer by whom a writ of attachment purports to have been issued was a commissioned officer, and they know the genuineness of his signature; and this notwithstanding that a successor to such officer who issued the writ has been elected and is performing the duties of the office since the issuance of the writ and before it was offered in evidence.

7.  *Trover and Conversion; Measure of Damages.*—The measure of damages in trover is the value of the property at the time of the conversion, with interest, but if the evidence showed a fluctuation in value between the time of conversion and the time of trial, the jury may adopt the highest value shown or any intermediate value at any time between the conversion and the trial.

8.  *Same; Mortgaged Property.*—Where the plaintiff's title is based on a mortgage, the measure of damages, in trover, is the amount of the mortgage debt and interest, not to exceed the value of the property.

9.  *Judgments; Parties Concluded; Parties to the Action.*—Evidence of proceedings in another cause to which one of the defendants in the pending action was not a party, are not admissible in evidence in behalf of all the defendants to the pending action, for the purpose of showing that a certain issue was res adjudicata. Such proceedings would be proper if limited in their effect to the defendants in the proceedings.

APPEAL from Morgan Circuit Court.

Heard before HON. O. KYLE.

This is an action by Martha L. Young against Ryan and others for the conversion of a stock of goods, the facts of which sufficiently appear in the opinion of the court.

D. W. SPEAKE and W. L. MARTIN, for appellant.— Where a mortgagor retains possession of a stock of goods and is permitted to sell in the regular course of trade the mortgage is fraudulent.—*Roden v. Norton,* 128 Ala. 129; *Birmingham Co. v. Roden,* 110 Ala. 511; *Owens v. Hobbie,* 82 Ala. 466; *Benedict v. Renfroe,* 75 Ala. 121; *Murray v. McNeeley,* 86 Ala. 234; *McDermott v. Eborn,* 90 Ala. 258; *O'Neill v. Brewing Co.,* 101 Ala. 383.

The action will not lie against defendant at the suit of plaintiff as the evidence showed that they had paid off and discharged the decree or judgment against them growing out of the trespass complained of in this action. —*Segars v. Kirkland*, 23 Ala. 680; *Brock v. Berry*, 31 So. Rep. 517. The evidence does not connect Brock either as aider or abettor to the sheriff in the wrong complained of.—71 Ala. 406; 66 Ala. 406. Appellants had the right to justify under the writ of attachment in this case.

WERT & WERT and E. W. GODBY, for appellees.—The authorities are unbroken that to maintain the defense of seizure under mesne process, the officer invoking it must have duly returned the process within the time prescribed by law or must show a sufficient excuse for not doing so.—*Womack v. Byrd*, 63 Ala. 505. The court properly excluded the attachment writs. When sued in trespass for taking goods by the holder of the legal title the attachment plaintiff and sheriff must show the existence of a state of facts justifying the seizure under this process to enforce a special statutory remedy.— *Hundley v. Chadwick*, 109 Ala. 575; *Glass v. Tisdale*, 106 Ala. 581; *Mechlin v. Deming*, 111 Ala. 159; *Robinson v. Holt*, 85 Ala. 597. The existence of a lien is no defense either to the principal or to the sheriff.—*Hundley v. Chadwick, supra; Dean v. Eleyton Land Co.*, 21 So. Rep. 214. In reference to the effect of the decree in the case of *Berry, et al. v. Cross, et al.*, we cite the following: .*Buffington v. Cook*, 35 Ala. 312; *Graham v. R. R. Co.*, 3 Wall. 704; 1 Hermann on Estoppel, 138; *McCrory v. Parks*, 18 Ohio St. 1; *Duncan v. Holcomb*, 26 Ind. 378.

DENSON, J.—Action of trover by Martha L. Young, plaintiff, against Silas P. Ryan, John L. Brock, and J. F. Lovin, defendants, for an alleged conversion of a stock of goods (drugs). The suit was commenced on the 2d day of July, 1898. The plaintiff claimed title to the goods by virtue of a mortgage which was executed to her by Thomas M. Cross on the 31st day of January, 1895. The mortgage indebtedness was evidenced by six notes given by the mortgagor to the mortgagee on the

22d day of January, 1895, each in the sum of $100, and due one year after date.

The complaint as originally filed alleged that the conversion occurred on the 28th day of March, 1898, but after the court overruled a demurrer filed by plaintiff to defendants' special plea numbered 2 which set up justification under an attachment issued at the suit of defendant John L. Brock against Thomas M. Cross on March 28, 1898, the plaintiff, by leave of the court, amended the complaint by striking out the date of the conversion as alleged and by inserting in lieu thereof as the date of the conversion, May 25, 1898. There were some special pleadings in the case, and the record is somewhat confusing as to the course of the proceedings with reference to part of it. By special plea 2, defendants set up justification under legal process, namely, the attachment issued at the suit of the defendant Brock against Thomas M. Cross. Plaintiff's demurrer to plea 2 was overruled, and she filed a general and two special replications, 1, 2, and 3. The defendants demurred to the special replication, assigning several grounds of demurrer, and the demurrer was sustained. The plaintiff then amended the special replications 2 and 3 which amendment appears to have been filed on the 23d day of April, 1902; the defendants then demurred to the replications as amended which demurrer contains two grounds, and was filed April 23, 1902. The court overruled the demurrer to the replications as amended. The defendants then filed a rejoinder to replications 2 and 3 as amended. Only one rejoinder to said replications is shown by the record, and it bears date of filing April 23, 1902.

The minute entry shows that the trial was had on the 24th day of April, 1902, and recites that issue was joined between the parties on the plea of not guilty, special plea 2, and the replication as amended to said plea and on the rejoinder to said amended replication. After the evidence was closed, the plaintiff was allowed by the court to file another amendment to the replication to plea 2, and the judgment entry recites that the defendants demurred to the amendment, and that the demurrer was sustained, but the record does not show what the amendment was nor the demurrer to it; they were en-

tirely atmospheric so far as the record shows. Neither does the record show that there was any refiling of previous demurrers made to the replications. Therefore, we cannot review the rulings on demurrers to the special replications.

The judgment entry recites that by leave of the court the defendants filed an amendment to the rejoinder to the replication as last amended, and that the amended rejoinder is designated in the minute entry as rejoinder No. 3. We find no such rejoinder in the record and cannot know what it was, nor can we review the ruling on the demurrer to it. Furthermore, if it should be contended that the rejoinder which appears in the record, is the rejoinder referred to in the minute entry as No. 3, the overruling of the demurrer to it would be error without injury, as the record affirmatively shows, that the defendants were allowed to make proof of the facts alleged in it.

With reference to the pleadings we remark that there was no necessity whatever for the special pleading which encumbers the record in this case. In trover, not guilty puts in issue every matter which might be pleaded in bar, except a release.—*Morris v. Hall,* 41 Ala. 510; *Barrett v. City of Mobile,* 129 Ala. 179, 30 South. 36. In the last case cited, the reason for the rule is explicitly stated, and we will not consume time in repeating it here. Under the rule above stated no necessity arises for consideration of the ruling of the court on the demurrers to special pleas 3, 4, and 5, if the matters alleged in those pleas were good in defense, the defendants could have availed themselves of the defense under the gneral issue upon which the record shows issue was joined. The record shows affirmatively that the defendants attempted to make proof of the matters alleged in said pleas.—*L. & N. R. R. Co. v. Hall,* 131 Ala. 161, 32 South. 603; *N. C. & St. L. Ry. v. Bates,* 133 Ala. 447, 32 South. 589.

The circuit court tried the case upon the theory that the sheriff, in selling the property seized at a place other than the one advertised, thereby became a trespasser ab inito, and was bereft of protection under the attachment writs. And this being true, that it was immaterial as to the attitude the plaintiff as mortgagee occupied with reference to the creditors of the defendant in at-

[Ryan, et al. v. Young.]

tachment·so far as the defendants were concerned; the mortgage being valid as between the mortgagor and mortgagee.

Applying the theory as above stated to the case it was very natural that the trial terminated as it did in a verdict for the plaintiff. It has never been doubted that if an officer has legal process to execute, and voluntarily abuses and .convert it to other purposes, he is not only a trespasser in that act, but becomes one ab inito, and is thus liable for all he has done under the process. This rule of the common law applies to all subordinate executive officers, and serves to confine them within the limits of their legal duties.—Bacon's Abr. Trespass. B; *Brock v. Berry*, 132 Ala. 95, 31 South. 517, and cases there cited; *Ross v. Philbrick*, 39 Me. 29; *Allen v. Crofoot*, 5 Wend. (N. Y. 506.

It is unnecessary to discuss the abstract proposition that a sheriff who advertises property seized under process for sale at a designated place and sells it at another and different place is guilty of a misfeasance in such sort as deprives him of the protection originally afforded by the process. The case in that respect has assumed a concrete form, this court having held on the facts of the case, that the sale was made without legal advertisement and that the sheriff in making it was guilty of a misfeasance by which he was dismantled of his protection, and made a trespasser from the beginning.—*Brock v. Berry*, 132 Ala. 95, 31 South. 517.

If the sheriff was a trespasser ab initio, then it cannot be and we understand it is not disputed that the defendant in the attachment suit might have maintained trespass or trover against the sheriff.—*Wright v. Spencer*, 1 Stew. 576, 18 Am. Dec. 76. But the contention of the appellants is that a stranger to the writ, one not a party to it, cannot claim any benefit from this rule of law. In this case the plaintiff as the grantee of the defendant claimed the benefit. "The authority bestowed by the law upon the sheriff did not authorize him to interfere with any of the rights of the plaintiff in this case, or to affect any title which the latter had as against the plaintiff in the attachment suit. The plaintiff in this case could not be injured by an abuse of the authority. If she has any cause of action against the defendants, it

was complete in the instant of the levy, and the amount of her recovery could be neither increased nor lessened by any subsequent irregularity of action on the part of the defendant. The sheriff had the right to levy the attachment, if the conveyance to the plaintiff was fraudulent. The process in his hands clothed him with the right of the plaintiff therein to assert the fraud in the conveyance. His connection with the title was thus so made as to authorize him to assail the title of the defendant's grantee. The right which the process thus gave the sheriff could not be taken away by a misfeasance, which could not in any event affect the plaintiff We cannot perceive any reason or justice in imputing to the sheriff's misfeasance the effect of converting a lawful into an unlawful act as to one who has no interest whatever in the question whether the sheriff does or does not commit a misfeasance." The quotation has been extracted from the case of *Hartshorn v. Williams*, 31 Ala. 149, which, so far as the facts of that case are concerned, presented to the court the precise question which has been presented by the case at bar. The court there held, that notwithstanding the sheriff was guilty of conduct which rendered him a trespasser from the beginning as to the defendant in the process, yet the plaintiff, grantee of the defendant in the attachment suit could not invoke the rule of law, and that the sheriff was not deprived of the privilege of showing that the plaintiff in the trover suit against him was a grantee under a conveyance that was fraudulent as against creditors of and purchasers from the defendant in the attachment suit. It is true, the decision did not have the assent of Judge Stone. He rendered a dissenting opinion. And while we have been impressed with the cogency of his reasoning in support of the conclusion he reached, which conclusion was contrary to the contention of the appellants here, yet the case has stood as authority for nearly 50 years. We can see no great hardship that the ruling there made will work, and remembering the salutary doctrine that "it is often more important that a rule of law should be fixed, even though with less of reason in it, than subject to the uncertainty of fluctuating judicial decisions," we cannot yield to the implied solicitations to overturn the case as authority. There are other authorities in support of the

proposition that if the original taking be not a trespass, as against the plaintiff, the subsequent conversion of the property will not make the defendant liable.—*Davis v. Young,* 20 Ala. 155; *Henderson v. Marx,* 57 Ala. 169. But it is insisted that the sheriff did not make due return of the writs of attachment under which the goods were levied upon and that therefore the defendants do not come within the principle enunciated in the case of *Hartshorn v. Williams, supra.* The attachments were issued on the 28th of March, 1898, returnable to the next term of the court, which under the statute regulating the terms of the circuit court for Morgan county, convened on the 18th day of April, 1898, and could continue four weeks. The levy of the writs of attachment was made on the 28th day of March, the same day of their issuance.

The record affirmatively shows that on the 9th day of May, 1898, the sheriff applied to the court for an order to sell the property levied on under the writs on the ground that the property would greatly depreciate in value. The application was offered in evidence, and recites the fact that the attachments had been levied and returns made thereof. It also affirmatively appears that the court, acting on the application of the sheriff, granted the order of sale prayed for, the order of sale being set out in the record. It further affirmatively appears that the sale was advertised and made under the said order. In the face of the proof it cannot be said that the sheriff did not make return of the writs to the term of the court to which they were returnable and in due time. It is true that Turley, the deputy sheriff, testified that, "after having sold the goods under an order of the court, I returned the writ of attachment in the case, together with the money received from the sale of goods into court." But in this testimony it is quite evident that the witness was not referring to the official return but to the paper itself—the writ. This must be true because the court could not have ordered the sale without the return of the levy by the officer showing the goods levied on, and the record shows that the order was granted on proof supporting the allegations of the application. Hence, the case is withdrawn from the influence of the case of *Womack v. Bird,* 63 Ala. 500, and the insistence of the appellee in this respect cannot avail anything.

If the plaintiff's mortgage was void as to the plaintiff in the attachment suit and the doctrine of trespass ab initio could not be invoked against the defendants, the original taking under the attachment was not void. In this view of the case, the circuit court proceeded upon an erroneous theory in the trial of the case.

The agreements between the mortgagor and the mortgagee with reference to the mortgagor being allowed to remain in possession of the goods mortgaged and the extent of such agreements, were competent evidence on the question of fraud vel non, and the court erred in not allowing proof of them to be made. If there was such an agreement between the parties to the mortgage as the defendants offered to prove, it would render the mortgage void as to creditors, existing and subsequent|— *Brock v. Berry, supra; Christian & Craft Grocery Co. v. Mitchell & Lyons,* 121 Ala. 84, 25 South. 571, 77 Am. St. Rep. 30. In this aspect of the case it would make no difference whether the plaintiffs in attachment had any lien on the goods for rent or not.

The witness Turley, after testifying that he was deputy sheriff, testified that as such he took charge of the drug business of Thomas M. Cross in favor of John F. Brock and L. P. Troup as administrator. After the witness had testified in detail about removing the goods and the sale of them, the bill of exceptions recites, "the witness further testified that said writs of attachment together with indorsements thereon are in words and figures as follows," then follow the writs and returns of the sheriff made on them, all set out in hæc verba. After the witness had given parol evidence of the contents of the writs and returns on them, the bill of exceptions states that the defendants offered said writs of attachments and indorsements thereon in evidence. A general objection made by the plaintiff to the writs was sustained.

In the view we have taken of the case the writs were competent as evidence under the general issue, and it would seem that the Brock writ, under the issue made by plea 2, was competent. But it has been insisted by the brief and argument of counsel for the appellee, that there was no proof of the authenticity of the writs. This contention cannot prevail; first, for the reason that without

objection the witness Turley testified that the writs were issued out of the circuit court of Morgan county and that he seized the goods under them; secondly, they purport to have been issued and signed by the clerk of the circuit court of Morgan county. We judicially know who are the commissioned officers of the state within its limits, the extent of their authority and the genuineness of their signatures. This rule is not varied by reason of the fact that between the time of the issuance of the writs and the time they were offered in evidence a successor to the officer who issued the writs had been elected and was performing the duties of the office.—*Sandlin v. Anderson,* 76 Ala. 403, and authorities cited in that case; *Whitney v. Jasper Land Co.,* 119 Ala. 497, 24 South. 259; *McCarver v. Herzberg,* 120 Ala. 523, 25 South. 3; *Barron v. Tart,* 18 Ala. 668. We remark incidentally, that while the defendants were not allowed to offer the writs in evidence, there was no ruling of the court excluding the parol evidence of their contents from the jury.

The manifest purpose of the introduction of the chancery proceedings in evidence was to show that the validity vel non of the plaintiff's mortgage was res adjudicata, and therefore, that the plaintiff was precluded from maintaining the suit. "The rule of res adjudicata, is confined to those cases where the parties to the two suits are the same, the subject-matter the same, the identical point is directly in issue, and the judgment has been rendered in the first suit on that point."—*McCall v. Jones,* 72 Ala. 368; *Gidbreath v. Jones,* 66 Ala. 129; *Fidelity & Deposit Co. v. Robertson,* 136 Ala. 379 at page 410, 34 South. 933 at page 944.

Pretermitting discussion of other ingredients, we note that an essential ingredient of res adjudicata was lacking in the proceeding offered, the defendant Lovin was not a party to the suit in chancery. The proceedings were offered in behalf of all the defendants without any offer to limit the effect of the evidence to defendants Ryan and Brock, and even if the proceeding could be held competent as to them. yet, not being competent as to Lovin, the court did not err in not allowing them in evidence.—Authorities supra; *Burgin v. Raplee,* 100 Ala. 433, 14 South. 205.

In trover, ordinarily, the measure of damages is the

value of the property at the time of the conversion with interest, but if the evidence shows fluctuation in value after the conversion, the jury, in their discretion, may fix the value of the higher or highest price at any time between the conversion and the time of trial.—4 Mayfield's Dig. p. 998, § 220. When the plaintiff's title is based on a mortgage the measure of damage is the amount of the mortgage debt and interest not to exceed the value of the property.—*Seibold v. Rogers*, 110 Ala. 438, 18 South. 312.

Having reached the conclusion that the case was tried on an inaccurate theory as to the main proposition involved in the case, and as the propositions involved in the charges given for the plaintiff will hardly arise on another trial, we deem it unnecessary to criticise the charges given for the plaintiff. With the evidence which was excluded and which we have here held was admissible, admitted, it is clear the charges should not be given.

Neither is it necessary to discuss the charges refused to the defendant; what has been said in this opinion will be a sufficient guide for the court in this respect on another trial.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

WEAKLEY, C. J., and TYSON and SIMPSON, JJ., concur.